# Williams *versus* Irwin.

1. In an equitable ejectment to enforce the payment of purchase-money, where the defendant is some person other than the vendee, it is incumbent upon the plaintiff to prove that such defendant entered into possession under the vendee.

2. A. sold a tract of land by articles of agreement to B. B. leased the land to various tenants and afterwards died. C. brought an action of ejectment against said tenants, recovered judgment and took possession of the land. Subsequently he obtained a quit-claim deed from B.'s heirs. A. having afterwards brought an action of equitable ejectment against C. to enforce the payment of purchase-money, and proved the above facts, *Held*, that the evidence indicated a title in C. hostile to B. and not under him, and that therefore plaintiff was not entitled to recover.

3. In the above case, A., in order to prove title in himself, gave in evidence a judgment against one S.; an execution issued thereon, a sheriff's sale of the land in question as the property of S., and a sheriff's deed therefor to A. He further proved that S. had lived on the land and built a house thereon, but failed to prove title in S. *Held*, that the evidence failed to show title in the plaintiff superior to that of defendant, and that hence a nonsuit was properly awarded.

October 27th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Armstrong county :* Of October and November Term 1881, No. 181.

[Williams *v.* Irwin.]

This was an equitable ejectment, brought in August, 1860, by Thomas Williams against Hugh Donaldson, Jonathan Grinder and Mrs. Joseph Jarvis, to enforce payment of the purchase money of four lots and a building in the borough of Freeport, under articles of agreement dated July 12th 1841, whereby the said Thomas Williams agreed to sell said premises to one Joseph Wilson, in consideration of $2,200, of which amount $200 was paid on the execution of the agreement, and the balance was to be paid in five annual instalments of $400, with interest. Wilson took immediate possession, and for a number of years occupied the premises as a tannery. He afterwards rented the premises to the defendants, Hugh Donaldson and Joseph Grinder, who sublet a part to Mrs. Jarvis. He then moved out of the county, and died sometime prior to 1849.

The writ in this case was served August 18th 1860, on the defendants Donaldson et al., and on March 18th 1861, judgment was entered for want of an appearance.

In 1866, one P. S. Weaver brought an ejectment against Donaldson et al., recovered judgment and obtained possession of said premises under a claim of title (as stated by defendant's counsel) paramount to that of Williams. On August 10th 1868, Weaver obtained a quit-claim deed from the heirs of Joseph Wilson, for the consideration of $500. This deed was recorded March 18th 1869. Weaver put one Miller McRae in possession as his tenant.

On December 13th 1869, counsel for the plaintiff in this case moved to strike off the judgment entered by default, in 1861, against Donaldson et al. This motion was dismissed in 1872, but was afterwards, in 1876, reinstated, and on March 6th 1876, the court entered an order striking off the said judgment. In May, 1876, the death of the plaintiff, Thomas Williams, was suggested, and his administrators, Sarah D. Williams and Thomas Williams, Jr., were substituted as plaintiffs.

In June 1876, the plaintiffs issued an alias summons in ejectment, and caused it to be served on P. S. Weaver and his tenant Miller McRae, and ruled them to plead. Weaver, protesting that he was not in possession at the time the suit was brought and the writ served, and that he should not be a party to this suit, pleaded not guilty, and that Donaldson and the other defendants (except McRae) are not in possession, having been ousted by him in the above mentioned ejectment, before the striking off of the judgment in this case. McRae pleaded not guilty, under the like protest. Subsequently the deaths of all the defendants, except Weaver and McRae, were suggested, and Weaver having been declared a bankrupt, his assignee in bankruptcy, Isaac Irwin, was substituted as sole defendant.

The case was called for trial February 9th 1880, before BRA-

[Williams v. Irwin.]

DIN, P. J., and the jury was sworn as to Thomas Williams, administrator of Thomas Williams, deceased, plaintiff, and Miller McRae and Isaac Irwin, assignee in bankruptcy of P. S. Weaver, defendants. The plaintiff put in evidence the articles of agreement of 1841, between Thomas Williams, Sr., and Joseph Wilson, and claimed that Weaver's title was derived from Wilson. In support of this claim, they offered in evidence the deed of August 10th 1868, from the heirs of Joseph Wilson to P. S. Weaver. Objected to as irrelevant, being dated after the commencement of this suit. *By the Court.*—"We cannot receive this testimony for that purpose; it not being proposed to follow it by any admission on the part of P. S. Weaver that he proposed to pay the purchase money to Williams." Objection sustained. Exception.

The plaintiff put in evidence, under objection as irrelevant, the record of a judgment, No. 131, December term 1837, Thomas Williams *v.* Simon Snyder, followed by an execution under which the premises in question were sold at sheriff's sale to Thomas Williams (the plaintiff), and a sheriff's deed acknowledged to him therefor. Title was not shown, however, in Snyder.

The court entered a compulsory nonsuit, filing the following order :—

"1880, February 10th. After hearing, the court, being of the opinion that the alias summons in ejectment (served on Peter Weaver sixteen years after the original summons was issued and served on original defendants) was irregular.

"And that if the original action by Thomas Williams against Hugh Donaldson, Jonathan Grinder and Mrs. Joseph Jarvis, in which judgment was taken by default in March 1861, and stricken off in March 1876, on motion of plaintiff, was intended, as is claimed to be, an action to enforce payment of purchase money, the same cannot be sustained as such for the reason that the heirs and legal representatives of the vendee, Wilson (who was dead before suit was brought), were not made parties thereto.

"And if the said action is to be sustained as a possessory action at common law, then the proper parties have not been substituted as plaintiffs, and the striking off the judgment by default was unnecessary and irregular.

"We direct a compulsory nonsuit to be entered against the plaintiffs as the case now stands on the record, and in which the jury was sworn, Thomas Williams, administrator *v.* Peter S. Weaver's assignee; and entertain a motion to take off nonsuit."

Subsequently the court entered the following order :—

1880, May 22d, case called. Mr. Gilpin declines to argue

case for plaintiff, Mr. Barclay does not appear, and the court being of the opinion that the court had no power to open a judgment by default in ejectment, on motion of plaintiff, after the lapse of eight years, at which time the motion was first made, or after fifteen years when the order opening the judgment was actually made, and that said order and subsequent proceedings were irregular and unauthorized by law, do refuse the motion, and exception noted by the court.

The plaintiff thereupon took this writ of error, assigning for error the action of the court in entering the nonsuit and in refusing to take it off.

*David Barclay*, for the plaintiff in error.—In bringing the action, and taking judgment by default, the plaintiff's attorney believed that Donaldson and the other defendants in possession represented Wilson's title. In this he was mistaken in fact, they being only tenants under Wilson. When he discovered that Weaver had purchased Wilson's title from his heirs he rightly moved to strike off the judgment against Donaldson et al., and the court rightly granted the motion. Weaver, as terre-tenant, was entitled to have the judgment opened, and he suffered no injury by the plaintiff's action. Where a plaintiff has been injured by the entry of a judgment in his favor by mistake, he may move to strike it off. Equity will relieve in such a case: Gross *v*. Leber, 11 Wr. 520; Reigel *v*. Wilson, 10 P. F. Smith 394. Even a third person, not a party to the suit, whose interests are affected by a judgment, may have it opened: Brown *v*. Simpson, 2 Watts 239. The Supreme Court will, for cause shown, reverse a judgment in favor of plaintiff below on a writ of error taken by him: O'Donnell *v*. Allegheny Valley R. R. Co., 14 Wr. 490. The judgment, when stricken off, ceased to have any existence. The action of the court was res adjudicata, and the court could not reverse its former action in this collateral action. Weaver was properly made a defendant in the alias summons, and as he represented Wilson's title, under his deed from Wilson's heirs, he was bound to pay the residue of the purchase money under the articles of agreement with Wilson, or give up the land. He could not escape from the position in which his deed placed him, and if he set up any equitable defence he must show affirmatively such a state of facts as would authorize a chancellor to interfere by injunction: Waln *v*. Smith, 1 Phila. 362. Lapse of time for more than twenty-one years will not enable a vendee, under articles of agreement, or those claiming under him, to resist payment of the purchase money: Congregation *v*. Miles, 4 Watts 146.

*Levi Bird Duff*, for the defendant in error.

[Williams *v.* Irwin.]

Mr. Justice MERCUR delivered the opinion of the court, January 3d 1882.

This was an action of ejectment. The errors assigned are the entering a compulsory nonsuit, and refusing to take it off.

The summons issued in 1860, in favor of Thomas Williams, against three defendants, who were duly served. In March 1861 judgment was taken against them for want of an appearance. In 1873 the plaintiff obtained a rule to show cause why the judgment should not be stricken off. In March 1876 this rule was made absolute. Soon thereafter the death of the plaintiff was suggested, and the names of his administrators substituted. An alias summons issued, and in June following was served on Weaver and his tenant, McRae. Weaver, under protest that he was not in possession of the premises, either by himself or tenant, at the time of the service of the writ, and that he should not be made a party to the suit, or his rights affected thereby, pleaded not guilty, and McRae did the same. Before the case came on for trial all the original defendants died, Weaver had been decreed a bankrupt, and Irwin appointed his assignee. The jury was sworn and cause tried against McRae, and Irwin, assignee in bankruptcy of Weaver, as sole defendants.

On the trial the main reliance of the plaintiffs was on an article of agreement entered into by one Joseph Wilson with Thomas Williams in 1841; but they gave no evidence that Weaver entered into possession under Wilson. On the contrary Weaver recovered by ejectment against the tenants of Wilson six years after this suit was commenced, and as the evidence indicates on a title hostile to Wilson's. It is true evidence was offered by the plaintiffs for the alleged purpose of showing that Weaver claimed under Wilson; but it was rejected by the court, and there is no assignment of error to this rejection. The correctness of the judgment must then rest solely on the evidence received.

Having failed to prove that Weaver entered under the title of Wilson, the only other course for the plaintiffs was to establish a title in Thomas Williams. This they wholly failed to do. They gave in evidence a judgment against one Simon Snyder, an execution thereon, and a sale of the land and deed to Williams. They did not give evidence of any title in Snyder, nor did any witness testify that Snyder ever claimed to own the land. Snyder had moved away from the neighborhood, and was not called as a witness. It was not shown whether he was living or dead. It appeared that Snyder lived on the premises and operated the tannery thereon for several years, and built a house which he occupied. No evidence was given showing under what right or claim he entered or con-

tinued in possession, nor whether all the improvements he made were not more than compensated by his use of the premises. The purchase of Williams gave him a right to the possession of Snyder. Under that right he agreed to sell to Wilson who put his tenants in possession. Weaver, having recovered by legal proceedings adverse to that title, can retain possession against the plaintiffs until they show a superior title in themselves. This they wholly failed to establish, and the learned judge committed no error in taking the case from the jury.

Judgment affirmed.